PANAMA SAVINGS BANK, Appellant, v. A. E. DE COU, Appellee.

No. 39573.

DECEMBER 13, 1929.

*William P. Welch,* for appellant.

*Havens & Elston,* for appellee.

GRIMM, J.—On the 25th day of February, 1925, John Pauley and Elizabeth Pauley, his wife, executed and delivered to the Panama Savings Bank, of Panama, Iowa, a chattel mortgage covering live stock, a portion of the description being as follows:

"24 brood sows, average weight, about 250 lbs. each, mixed colors; about 40 head of stock hogs; and 15 fall pigs. * * *"

"All of the above property owned by me and in my possession on the southeast quarter of Section 26, Township 80, Range 41, Harrison County, Iowa."

It is clearly proven that Pauley occupied and controlled but one farm in Harrison County, Iowa, during all of the time in controversy.

This mortgage was properly acknowledged and filed for record in Harrison County, Iowa, on the 15th day of April, 1925. The mortgage was given to secure the payment of two promissory notes, of even date with the mortgage, one for $1,800 and the other for $1,000, both payable in one year from date, with interest at 8 per cent, and payable to the Panama Savings Bank of Panama, Iowa. It is claimed that, between the 15th day of April, 1925, and the 15th day of February, 1926, the "defendant S. R. DeCou wrongfully and unlawfully appropriated to his own use 17 head of the hogs aforesaid, of the value of $600; that the defendant had knowledge and notice of the lien held by the plaintiff upon said property, and his act in such converting said hogs constituted a conversion thereof, wherein and whereby the plaintiff has suffered and sustained damages to the extent of $600, by reason of the wrongful appropriation thereof by said defendant."

Having in mind that the mortgage bears date February 25, 1925, the record shows, by stipulation, that, between April 17, 1925, and October 10, 1925, Pauley sold to the defendant 37 hogs, averaging approximately 200 pounds apiece, for a total of $765.06. The mortgagor, Pauley, was called as a witness, and he testified on this particular subject as follows:

"I sold the hogs at one place after April 15, 1925. I sold Nick Shafer four brood sows. I didn't sell any brood sows to anybody except Nick Shafer after April 15th,—I don't think so. We butchered two sows, and lost three of them pigging; and I don't remember where the others did go. * * *

"Q. Now, what were the weights of the hogs in February, 1925,—the brood sows? A. 250 lbs. Q. Well, now, you sold brood sows to Shafer, and the balance of the hogs to DeCou? A. Yes, sir. After April 15th, I don't think I sold hogs of any kind to any person except DeCou. All of the hogs that were sold by me were the four brood sows to Shafer, and the balance to DeCou; and that is right. Q. Well, now, you do know that the

only person you sold hogs to during the year were Shafer, and the checks that these boys brought back made out by DeCou? A. Yes, sir."

While there is some confusion and apparent contradiction in the record on the subject, we think it fairly appears that the mortgagor had less than 40 stock hogs, and they were all (37 of them) sold to the defendant.

Mr. Welch, who was trustee in bankruptcy of the John Pauley bankrupt estate, and who took office in February, 1926; testified that, when he took possession, there were on the Pauley place only 25 pigs, "mostly all fall pigs,—fall or late summer of 1925." From this record it is quite evident that the hogs delivered to the defendant between April 17, 1925, and October 10, 1925, were covered by the said mortgage.

I. The first question which confronts us is whether said mortgage was notice to the defendant of the lien of the plaintiff on the hogs. It will be noted that the mortgage contains this language:

"All of the above property owned by me and in my possession on the southeast quarter, Section 26, Township 80, Range 41, Harrison County, Iowa."

It appears in the record that Pauley had but one place of business,—one place where he kept hogs in Harrison County, Iowa,—during all of the time in controversy. It is apparent that, if the language above quoted, specifying where the property was kept by Pauley in his possession, together with the language hereinbefore quoted concerning the number and kind of hogs, is not a sufficient description, as required by law, then the mortgage was not notice.

It will be noted that, while the mortgage specifies where the property is kept and owned by the mortgagor, it fails entirely to specify that "about 40 stock hogs" are all the hogs of that type or class owned and kept by the mortgagor on the particular farm described.

We think the lower court correctly held that this mortgage was not sufficient to impart constructive notice to third parties. The requirement has been variously stated by this court:

"The description of the property as contained in the mort-

gage must direct the mind to evidence whereby the precise thing conveyed may be ascertained, and if thereby absolute certainty may be attained, the instrument is valid; otherwise it is void as to third parties for uncertainty." *Ormsby Bros. & Co. v. Nolan,* 69 Iowa 130.

This has been approved in *Westinghouse Co. v. McGrath,* 131 Iowa 226.

There can be no absolute certainty by the mere statement "about 40 stock hogs," without the declaration that there are mortgaged all of that class of hogs owned by the mortgagor and kept by him at a certain definite place.

It is unnecessary to determine other questions raised in the case.

For the reasons hereinbefore stated, the case must be, and is,—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.